THE MERCHANTS' INSURANCE COMPANY v. THE CITY OF NEWARK.

1. Corporations of this state engaged in the business of insuring property against fire are taxable under the provisions of the act of April 11th, 1866. *Rev., p.* 1156, § 15 *et seq.*
2. Such a tax is a property and not a franchise tax.
3. The tax is to be imposed upon the amount of paid in capital stock and accumulated surplus, after deducting therefrom the value of real

estate as prescribed, and also the value of property in which the stock and surplus is invested, which is by law non-taxable.

4. Municipal bonds issued by authority of legislative acts prior to the adoption of the constitutional amendment on the subject of taxation, and which were, by said act, expressly declared to be exempt from all taxation, are, by law, non-taxable. The provisions in such acts for the exemption of such bonds were repealed by the constitutional amendment, and bonds issued after its adoption are taxable.

5. Municipal bonds upon which the municipality has, by authority of an act of the legislature prior to the amendment, agreed to pay all taxes, are taxable, but the municipality is bound by such agreement and must pay such taxes.

6. Debts of horse railroad corporations, secured by mortgage on land, to trustees are non-taxable, if the mortgagor has not claimed a deduction therefor.

On *certiorari.*

The above entitled writ of *certiorari* has brought up an assessment of taxes by the tax officers of the city of Newark against the Merchants' Insurance Company.

Three other writs have brought up like assessments against the American Insurance Company, the Firemen's Insurance Company and the Newark Fire Insurance Company.

As the same questions were presented in all the cases, they were argued together upon facts agreed upon by the attorneys of the respective prosecutors and of the city.

Argued at June Term, 1891, before Justices SCUDDER and MAGIE.

For the prosecutors, *Frederic Adams* and *Edward M. Colie.*

For the city, *Joseph Coult.*

The opinion of the court was delivered by

MAGIE, J. The regularity of the respective assessments before us is questioned by some of the reasons filed, but on the argument those reasons were abandoned and counsel confined themselves to the question of the validity of the taxes complained of.

All the prosecutors are corporations of this state, having a capital stock and engaged in the business of insuring property against fire.

Counsel for the city concedes that prosecutors are to be taxed by the rule contained in the Tax act of April 11th, 1866; *i. e.,* upon the amount of their capital stock paid in and their accumulated surplus, after deducting the value of their real estate as prescribed in the act. *Rev., p.* 1156, § 15; *p.* 1159, § 23. Insurance corporations are expressly excepted from the operation of section 105 of the Corporation act (*Rev., p.* 196), as amended by the supplement of March 7th, 1878 (*Rev. Sup ,* *p.* 170), which imposes a tax on the real and personal estate of certain corporations as if they were individuals. The last named act withdrew from the operation of the act of 1866 a class of corporations and subjected them to taxation in a different mode. The act of 1866 had been declared to be in harmony with the constitutional requirement that " property shall be assessed for taxes under general laws and by uniform rules, according to its true value." *N. Ward Bank* v. *Newark,* 10 *Vroom* 380; *S. C.,* 11 *Id.* 558. The act of 1878 has also been declared to be valid legislation within that constitutional requirement. *Trenton Iron Co.* v. *Yard,* 13 *Id.* 357. It must result that the act of 1866 remains valid in this respect in its operation upon corporations not within the act of 1878.

Counsel for the city also concedes that, in estimating the paid in capital stock and the accumulated surplus of corporations for taxation under the act of 1866, deduction is to be made not only for their real estate, but also for so much of the stock and surplus as is invested in property exempt by law from taxation.

Such was the construction given to provisions of the Tax act of 1862 (*Pamph. L., p.* 349), which were identical with those of the act of 1866 now under consideration. *Newark City Bank* v. *Assessor,* 1 *Vroom* 13; *Easton* v. *Metz,* 3 *Id.* 199.

These concessions leave nothing for consideration but the claim of prosecutors that, in determining the amount of stock and surplus for taxation, the city authorities refuse to deduct the value of certain securities in which the same were invested, and which they claim were non-taxable.

One of the securities in question is a Long Branch graded school bond, issued under authority of an act approved March 22d, 1875 (*Pamph. L., p.* 309), which expressly enacts that bonds so issued shall be " exempt from taxation." The act took effect immediately, and so became law before the constitutional amendments were operative, which was September 28th, 1875. *Pamph. L.* 1876, *p.* 433. The bond is dated April 1st, 1875, is payable to bearer, and declares on its face that it is exempt from taxation. In the absence of proof to the contrary, it must be presumed to have been issued on its date. Had the state issued its own obligations under an act exempting them from taxation, a contract would have arisen which the state could not impair by any subsequent act. *Newark City Bank* v. *Assessor,* 1 *Vroom* 13. An act authorizing a municipality, an agent for local government, to issue its bonds, and declaring bonds so issued to be exempt from taxation, has similar force. Doubtless such an act would not constitute a contract between the state and the municipality, and the authority to issue such bonds might at any time be withdrawn. But if before withdrawal of authority the municipality has issued the bonds exempt from taxation, thereupon a contract arose with every successive holder which could not be impaired even by a constitutional amendment. *Lehigh Valley R. R Co.* v. *McFarlan,* 4 *Stew. Eq.* 706.

This bond, therefore, carried with it an exemption from taxation, and its value ought to have been deducted from the amount assessed upon its owner.

Other securities claimed to be non-taxable are certain bonds issued by the township of East Orange. By an act passed in 1872 that municipality was authorized to issue bonds exempt from taxation. The bonds in question, however, were all issued by the township after the constitutional amendment.

had gone into operation. That amendment, by its own force, abrogated and annulled all local and special laws exempting property from taxation, unless, they constituted irrepealable contracts. *Sisters, &c.,* v. *Chatham,* 22 *Vroom* 89 ; *S. C.,* 23 *Id.* 373 ; *Newark, &c.,* v. *Clark,* 24 *Id.* 332. The grant of authority to issue bonds which should be exempt from taxation was not of the nature of a contract. It might be, and was, abrogated by the force of the constitutional amendment.

Other securities involved in prosecutors' claims are bonds of the city of Newark issued to and held by one of prosecutors, under a written agreement with the city, made by authority of a supplement to the charter approved March 7th, 1873, whereby the city agreed to assume and pay all national, state, county and city taxes lawfully assessed on the bonds. Counsel for the city consents that, because of this agreement, the assessment against the owner of these bonds should be set aside to the amount of their value. But the supplement to the charter did not exempt these bonds from taxation ; it only authorized the city to agree to pay all taxes upon them. The agreement contemplates an assessment (which is necessary to fix the amount of state and county taxes), the tax levied on which is to be discharged by the city without any payment, provided the holders of the bonds have returned them for taxation in a specified mode, as the prosecutor has done. This agreement is unaffected by any subsequent act of the state and must be performed according to its terms.

If all state and county taxes are paid, a vacation of the assessment to the amount of these bonds may not be improper, as it will produce the same result as if the city discharged the tax to that amount according to its agreement.

The remaining securities in question consist of bonds issued by various corporations of this state engaged in the business of carriers as horse railroad companies. The payment of these bonds is secured by various mortgages made to trustees for the benefit of the bondholders. The mortgages cover real as well as personal estate. The contention on the part of prosecutors is that the debts evidenced by the bonds and secured

by the mortgages are non-taxable by the express provisions of the act of April 17th, 1876 (*Rev., p.* 1163), unless the owner of the mortgaged land has claimed and been allowed a deduction therefor. It is admitted that no deduction was claimed by any of the corporations who made the bonds in question.

Much argument was directed to the question of the true rule for the taxation of horse railroad companies. The act of 1878, which provides for the taxation of the real and personal estates of corporations in the same manner as that of individuals, expressly excepts from its operation "railway" companies. If these companies are not railway companies, they are taxable by the act of 1878 ; if they are railway companies, they are taxable by the act of 1866.

Unless necessary to determine this question, it ought not to be considered, especially when none of the companies interested are before the court. It is unnecessary to determine it, because, if such companies are taxable under the act of 1878, they are taxable on real estate as if they were individuals. If they are taxable under the act of 1866, their real estate within this state is taxable in the same mode precisely. *Rev., p.* 1159, § 23.

The act of April 17th, 1876 (*Rev., p.* 1163), is constitutionally unobjectionable. Its object is to tax mortgaged land at the place where it is situate, leaving it to the volition of the mortgagor or owner whether he or the holder of the debt secured by the mortgage shall pay such tax. *Vail's Executor* v. *Runyon,* 12 *Vroom* 98. Being general, it applies to all mortgages, and debts secured by mortgage, within its purview. When such debts are exempt from taxation, they are not within its purview, and the owner's right to deduction does not exist. *Davison* v. *Silvers,* 12 *Vroom* 505.

But there is no such obstacle to the deduction of debts evidenced by bonds and secured by mortgage to trustees for the benefit of the bond holders. Owing to the scattered holdings and constant transfer of such bonds, there may be practical difficulty in making proper claim for such deduction. But I

deem it beyond question that upon a proper claim a deduction would be required and the bonds would be subject to proportionate assessment.

The late act for the taxation of railroad and canal property recognizes the principle of the deduction provided for by the act of April 17th, 1876, and by section 10 applies it to mortgages and debts secured thereby of the railroad and canal corporations affected.

The result is that, since no claim for deduction was made in these cases, the bonds secured by these mortgages were non-taxable and should have been deducted by the city authorities as requested.

I have reached this conclusion more readily because a single tax is thereby imposed on the mortgaged property. This must be presumed to have been intended, and such presumption must prevail in the absence of clear and unmistakable contrary intent. The contention on the part of the city would, if successful, impose on the holders of these bonds the tax which the mortgagor has, within the settled meaning of the act of April 17th, 1876, already paid. The result would be double taxation, and I can find no ground for holding such double taxation to have been intended.

Counsel can probably agree on the application of the conclusions reached. If not, they can apply to settle the proper rule to be entered.